No. 10,968.

VORIS *v.* THE PEOPLE.

Decided June 2, 1924.  Rehearing denied July 7, 1924.

Plaintiff in error was convicted of robbery.

*Affirmed.*

*On Application for Supersedeas.*

1. CRIMINAL LAW—*Robbery.*  Evidence reviewed and held sufficient to support a conviction of aggravated robbery.

2. EVIDENCE——*Criminal Law—Other Offenses.*  In a criminal trial, there is no error in the admission of evidence of other offenses, which by court instruction is limited to establishing intent, plan and system.

3. CRIMINAL LAW—*Accessory.*  An accessory may be charged as principal.

4. *Instructions—Accessory.*  Under the provisions of section 6645, C. L. '21, that an accessory is one who "hath advised *and* encouraged, etc.," a court instruction using the phrase, "hath advised *or* encouraged," held not erroneous.

5. *Argument of District Attorney.*  Language of a district attorney used in argument, held not prejudicial, where the court aptly instructed the jury to disregard it as having no basis in the evidence.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. PAUL DELANEY, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, Attorney General, Mr. JOSEPH P. O'CONNELL, Assistant, for the people.

*Department One.*

MR. JUSTICE BURKE delivered the opinion of the court.

THE information herein charged plaintiff in error (hereinafter referred to as defendant) and Eugene C. Voss and

Archie Zelinkoff with the crime of aggravated robbery, i. e., that at the time of the commission thereof they were armed with a deadly weapon with intention, if resisted, to maim and kill their victim, the prosecuting witness J. A. Erlinger. Voss and Zelinkoff entered pleas of guilty and thereafter, and before sentence, testified in this cause on behalf of the people. A verdict of guilty was returned against defendant and he was sentenced to the penitentiary for a term of from ten to twenty-five years. To review that judgment he brings error and asks that the writ be made a supersedeas.

On the evening of February 28, 1924, Voss, Zelinkoff, and one Nelson (who thereafter and prior to the trial herein was killed), held up and robbed Erlinger, a grocer, in the city of Denver. Defendant, who had worked six weeks for Erlinger and whose employment had terminated about the middle of that month, was not present at the time of the robbery. His conviction rests on the alleged fact that he had advised and encouraged the commission of the crime. Although these men were little more than boys they had become acquainted in the state reformatory where each had theretofore served a sentence. On their discharge from that institution they returned to the city of Denver and renewed their association.

The principal contentions of defendant here are: (1) The verdict is unsupported by the evidence; (2) the court permitted evidence of other unrelated crimes, committed and contemplated, to go to the jury; (3) defendant was charged as principal but convicted as an accessory; (4) the court's instruction No. 4 was erroneous; (5) the district attorney was guilty of prejudicial misconduct during the trial.

1. Counsel for defendant insists that this conviction rests solely upon the fact that while defendant, Voss and Nelson were returning from a social call, some three weeks prior to the robbery, they undesignedly passed the Erlinger store, at which time defendant innocently remarked that he had worked there and, in response to questions of his

companions, gave Erlinger's residence address and said that Erlinger kept his money in a suit-case he carried. Were that all, defendant's motion for a directed verdict should indeed have been sustained. The fact, however, is that defendant's guilty knowledge and relation to this crime is evidenced in some way by almost every one of the 110 pages of this testimony. Voss says, "Nelson made the remark, 'What does he carry in that suitcase' and he (defendant) told us he carried his money in there." Erlinger and his suitcase were not present. Defendant must not only have theretofore described Erlinger to his companions and told them about the suitcase, but he likewise proceeded to tell them how much cash was so carried. That a conspiracy was entered into between these four men, at this time if not before, to commit a series of burglaries and robberies clearly appears from a mere casual reading of this record. On the occasion in question defendant gave his associates all the information in his possession and necessary for their guidance in the commission of the crime. He volunteered this information to persons known to him to be thieves and no other reason appears for his action save his desire to aid them in that business. Voss says, concerning another robbery, "He just told us about the place and told us how much was in the place and approximately how we would have to make it  *  *  *  either by the use of a key or by force—breaking in.  *  *  *  He made the remark that he wished Nelson would come down with the car so we could go out there  *  *  *  to make the place.  *  *  *  What I mean by 'making the place' is going out there and breaking in the store  *  *  *. Before we had discussed about Mr. Erlinger we had all been talking about doing something  *  *  *  that we was to get some money someway, and that is how that Erlinger case was brought up.  *  *  *  By means of burglary or stickup—holdups  *  *  *  most every day from the time we met down there we was talking about something of the sort." Much of this is corroborated by Zelinkoff. At the city hall, in the presence of officers and of defendant and

Zelinkoff, Voss made, and afterwards signed, a full and detailed statement of the activities of the four men, including this Erlinger robbery and defendant's connection with it. Defendant was present, signed the statement as a witness, as well as a corroborative statement made by Zelinkoff, did not dispute their stories, and when asked, "You heard the questions just asked Eugene S. Voss and his answers to them in which he mentioned your name and described your connection with the various stickups recently in this city, are those answers correct?" he replied, "Them answers are correct as far as I know." When his own examination was written out and tendered him for signature he did not deny its correctness but explained that he did not care to sign it at that time. According to his own story he told the officer, "I am innocent until proven guilty." Later he said, "I didn't have anything to do with any holdups." Again, "What if I did tell you something what would you do then?" To which latter interrogatory he says the officer responded, "I wouldn't make you any promise at all," and he replied, "I have nothing to say then." His entire testimony is shifty, evasive and unsatisfactory. Before passing sentence upon him the trial Judge said, "If I were able to entertain a very slight belief that this boy was innocent, I would be the last man to permit a sentence to be imposed upon him." We have no doubt of the sufficiency of the evidence.

2. Evidence of other offenses was only admitted so far as it tended to establish intent, plan and system, and was so limited by the court's instructions. Such evidence comes within well established exceptions to the general rule and its admission was not error. Wharton's Criminal Evidence (9th Ed.) p. 36 secs. 31 and 32.

3. An accessory may be charged as principal. *Mulligan v. People,* 68 Colo. 17, 24, 189 Pac. 5.

4. Our statute (section 6645, C. L. 1921) defines an accessory as one who "hath advised *and* encouraged the perpetration of the crime." The court's instruction No. 4 read, "Hath advised *or* encouraged." Without citing any

authority in point, counsel for defendant makes much of this discrepancy and contends that there is no sufficient evidence of defendant's advice and encouragement of the crime in question. The argument has no merit. Whoso advises the commission of a crime encourages it, and whoso encourages the commission of a crime advises it; and he who accompanies thieves to the place of business of their intended victim and, knowing their business and the use which will be made of his information, describes the man, his habits, the route by which he goes to his home, and his manner of carrying the money upon which they have designs, hath both advised and encouraged his robbery.

5. During his closing argument counsel for the people stated, "the record shows that the defendant was convicted the second time for forgery." It does not appear whether the idea intended to be conveyed by this statement was two convictions or two forgeries. The statement was objected to. The trial Judge, apparently assuming that it meant, or might mean, two forgeries, promptly advised the jury that there was no evidence of it and directed them to disregard it. They were likewise instructed to consider only "evidence given upon the trial" and that "the arguments of counsel are not evidence." Under the circumstances we think there is no probability that defendant was prejudiced by the remark.

Finding no material error in the record the supersedeas is denied and the judgment affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR, sitting for MR. JUSTICE ALLEN, concur.